IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

TODDY, LLC,

                    Plaintiff,

v.

BRUMATE, INC.,

                    Defendant.

---

## COMPLAINT AND JURY DEMAND

Plaintiff Toddy, LLC (Plaintiff and their predecessors-in-interest are collectively referred to as "Toddy" or "Plaintiff"), by their undersigned attorneys, files this Complaint against Defendant BruMate, Inc. ("Brumate" or "Defendant") for trademark infringement, false designation of origin, unfair competition, and deceptive trade practices under the Lanham Act, the Colorado Consumer Protection Act, and common law. Plaintiff alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### I.      THE PARTIES

1.     Plaintiff is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business located at 3706 Aldrin Drive, Loveland, Colorado 80538.

2.      Upon information and belief, Defendant BruMate, Inc. is a corporation organized
and existing under the laws of the State of Delaware with a principal place of business at 3601
Walnut St., Fifth Floor, Denver, Colorado 80205. Defendant also has listed its address as 2061
York Street, Denver, Colorado 80205 in documents filed with the Colorado Secretary of State's
office.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C.
§ 1121 (the Lanham Act) and 28 U.S.C. §§ 1331 and 1338(a) and (b) (federal question). This
Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.
§ 1367 because those claims are so related to its federal claims that they form part of the same
case or controversy and derive from a common nucleus of operative fact.

4.      This Court has personal jurisdiction over Defendant, and venue is proper in this
District pursuant to 28 U.S.C. § 1391(b)(2), because Defendant has its principal place of business
in Denver, Colorado. Furthermore, Defendant's unfair competition and deceptive practices are
directed at consumers in this District and cause harm to Plaintiff in this District. In addition, on
information and belief, Defendant's activities about which Plaintiff complains, including its
development and use of an infringing mark and its promotion and sale of products bearing that
infringing mark, occurred in substantial part in this District.

## III.      BACKGROUND

### Plaintiff's Business and the TODDY Mark

5.      Plaintiff is the industry leader in the manufacture and distribution of equipment
for the cold brewing of coffee and tea. During the cold brewing process, time replaces heat, as

coffee grounds or tea are steeped in cold water and then filtered through a special filtering system. The bitter compounds that other brewing methods release are not released in the cold brewing process. The result is a smooth, low-acid concentrate ideal for iced or hot coffee or tea. Over the last several years, the popularity of cold brewed coffee has skyrocketed; it is now sold and promoted by popular coffeehouses and restaurants such as Starbucks, Blue Bottle Coffee, Coffee Bean & Tea Leaf, La Colombe, Dunkin' Donuts, and many more.

6.      Plaintiff's cold brew process was developed in the early 1960s by Todd Simpson, a chemical engineering graduate of Cornell University, and marketed under the trademark TODDY (the "TODDY Mark"). As early as 1980, Simpson used the TODDY Mark in connection with the marketing and sale of coffee and tea, as well as equipment used to brew coffee and tea. Plaintiff Toddy, LLC purchased the TODDY brand and assets in 2010.

7.      Today, Plaintiff sells home and commercial brewers, filters, accessories, premium coffee and tea, and merchandise, including drinking vessels, under the TODDY Mark throughout the country. Plaintiff's products are sold through brick-and-mortar retailers, online retailers, and coffeehouses. In addition, Plaintiff's commercial cold brew systems ("TODDY Cold Brew Systems") and filters are the choice of well-known international, national, and regional coffeehouse chains and thousands of specialty coffeehouses around the country. Plaintiff has sold more than one million TODDY Cold Brew Systems at retail. Plaintiff's products have been featured in numerous publications, including the New York Times, U.S. News and World Report, and Time Magazine.

8.      Since at least as early as 1980, Plaintiff has used the TODDY Mark continuously in commerce in connection with coffee and tea products and related equipment, accessories, and

merchandise. Representative examples of Plaintiff's products, including coffee and tea brewers, specialty coffee, and drinking vessels, are shown below:



9.      In addition to its decades-old and strong common-law rights in its TODDY Mark, Plaintiff owns the following federal trademark registrations, among others:

| Mark | Reg. No. /Date | Classes and Goods and Services |
|---|---|---|
| TODDY | 5609354<br>Nov. 20, 2018 | **INT. CL. 16** Paper coffee filters<br>**INT. CL. 21** Non-electric coffee and tea makers and parts and accessories therefor, sold as a unit; Filters not of paper being part of non-electric coffee and tea makers |
| TODDY | 2124767<br>Dec. 30, 1997 | **INT. CL. 30** Coffee; tea |
| TODDY | 1925306<br>Oct. 10, 1995 | **INT. CL. 21** food processing machinery, namely, non-electric coffee makers for household and commercial use |
| TODDY | 5399530<br>Feb. 13, 2018 | **INT. CL. 11** Coffee filters not of paper being part of electric coffee makers.<br>**INT. CL. 16** Paper coffee filters; paper filters for coffee makers<br>**INT. CL. 21** Non-electric coffee makers and non-paper coffee makers filters being part of non-electric coffee makers for household and commercial use<br>**INT. CL. 30** Coffee |

Copies of these registration certificates are attached as Exhibit A.

10.    The federal registrations listed above are prima facie evidence of Plaintiff's ownership of and the validity of those registered marks. Further, Registration Nos. 2124767 and 1925306 are incontestable, and thus constitute conclusive evidence of Plaintiff's exclusive right to use the TODDY Mark for the products specified in those registrations pursuant to 15 U.S.C. §§ 1065 and 1115(b).

11.    Plaintiff has expended considerable amounts of money advertising and promoting its products under the TODDY Mark, and has developed immense goodwill associated with the TODDY Mark by, among other things: advertising in printed publications and on the radio;

5

conducting social media campaigns; promoting YouTube videos; prominently featuring the
TODDY Mark on its products, including but not limited to its promotional items, t-shirts, hats,
accessories, and drinking vessels; attending trade shows; and using the TODDY Mark on its
website and elsewhere.

12.     Plaintiff has used the TODDY Mark on drinking vessels since at least 2007.
Representative examples of Toddy's drinking vessels (including insulated cups) bearing the
TODDY Mark are shown below:



13.     Based on the success and popularity of the TODDY Cold Brew System and
Plaintiff's widespread and continuous use of the TODDY Mark as a source identifier for
decades, and on the public and industry acknowledgement of the same, the TODDY Mark is and
has long been widely recognized as a source identifier for high-quality goods.

14.     The TODDY Mark is an arbitrary and inherently distinctive trademark. The
TODDY Mark also is commercially strong as a result of, among other things, Plaintiff's
extensive use of the TODDY Mark for decades, and it has become uniquely associated with
Plaintiff.

**Defendant's Wrongful Acts**

15.     Defendant uses and has used an infringing TODDY mark in unauthorized ways that falsely suggest and are likely to create the mistaken belief or impression that Defendant's products come from Plaintiff; are authorized, approved, or licensed by Plaintiff; and/or that Defendant is part of or otherwise affiliated with Plaintiff.

16.     Defendant has displayed, advertised, promoted, distributed, manufactured, offered for sale, and/or sold products bearing the mark TODDY. Specifically, Defendant markets and sells insulated drinking vessels that it identifies on its packaging and advertising as "TODDY" or "Toddy" ("Brumate Mugs"). As noted above, Plaintiff also sells insulated drinking vessels under its TODDY Mark.

17.     On information and belief, BruMate, Inc. was founded by Dylan Jacob in Denver, Colorado in 2016. Plaintiff's use of the TODDY Mark, including in connection with the sale of drinking vessels, thus long predates Defendant's use of the infringing TODDY mark.

18.     Defendant uses the word TODDY in a stylized trademark manner—and in many cases in larger size than the BRUMATE house mark—as shown below:























19.     Defendant offers its Brumate Mugs for sale through retail stores, including Bed,

Bath & Beyond, Scheels, and Best Buy, and online retailers such as Amazon.

20.     A search for the word "toddy" on Amazon places Plaintiff's and Defendant's

coffee-related products next to each other, as shown in the images below. Adding to the

likelihood of confusion, one sponsored search result for a Brumate Mug shown below describes

the product without using the word "Brumate" at all.





21.     Consumers of coffee and tea are thus likely to encounter both Plaintiff's and

Defendant's coffee- and tea-related products.

22.     On May 18, 2021, counsel for Plaintiff contacted Defendant to request that

Defendant cease and desist from using the infringing TODDY mark. *See* Exhibit B. Defendant

responded by alleging that "Brumate is merely using the term TODDY descriptively to refer to

its insulated mug for serving hot toddies and other warm cocktails"—presumably in an effort to

differentiate its products from Plaintiff's coffee- and tea-related products. *See* Exhibit C.

Defendant's suggestion that it uses TODDY descriptively rather than in a trademark manner is

belied by Defendant's actual use of the term.

23.     Brumate Mugs are not marketed exclusively as vessels for alcoholic beverages. To the contrary, the headline for the product on Defendant's website describes Brumate Mugs as "Insulated Coffee Mug[s]," as shown below, not vessels for "hot toddies and other warm cocktails":[1]



24.     Defendant's website also touts that the Brumate Mugs are "versatile, fully leakproof, triple-insulated stainless steel mug[s] with a handle that works with both hot and cold beverages. . . . Perfect for morning coffee, late night cocktails, and every drink in between."[2]

25.     Further contradicting Defendant's contention that its use of the word TODDY is a merely descriptive term referring to "its insulated mug for serving hot toddies and other warm cocktails," Defendant's website conspicuously excludes the Brumate Mugs from its collection of "Spirits & Barware."[3] Instead, the Brumate Mugs appear on the page for the collection of "Leakproof Coffee Tumblers."[4] Compare the images from Defendant's website below:

---

[1] https://brumate.com/collections/toddy (last accessed June 8, 2022).

[2] https://brumate.com/products/toddy-xl-32oz-onyx-leopard (last accessed June 8, 2022).

[3] https://brumate.com/collections/spirits (last accessed June 8, 2022).

[4] https://brumate.com/collections/coffee (last accessed June 8, 2022).



        

Rocks  High Ball  Imperial Pint (20oz)  Margtini  Nos'r  Liquor Canteen  Glitter Flask  Shaker Pint  Fifth



  

Toddy XL (32oz)    Imperial Pint (20oz)    Toddy (16oz)

26.     Even if Defendant were to market the Brumate Mugs solely for cocktails (and it does not), a "hot toddy" is a type of beverage, not a type of drinking vessel, so the term is not merely descriptive of an insulated mug.[5] Defendant, moreover, does not use the word TODDY as

---

[5] *See, e.g.*, Paul Clarke, *What's Your Favorite Approach to the Hot Toddy?*, Serious Eats (updated Aug. 9, 2018), https://www.seriouseats.com/how-to-make-a-hot-toddy-winter-cocktails ("At its most basic, the toddy is almost the simplest of all spirituous concoctions: liquor, sugar, hot water—done.").

a descriptive adjective for a type of drinking vessel—it simply calls its product "Toddy" or "the Toddy." Furthermore, the word TODDY is not actually descriptive of the Brumate Mugs. The terms "toddy glass" or "toddy mug" refer to clear glass vessels used to serve hot alcoholic beverages, not insulated metal coffee mugs.[6]

27.     After receiving Plaintiff's cease-and-desist letter, Defendant increased its trademark infringement instead of ceasing use of the infringing TODDY mark.

28.     Given the identical marks and the identical or closely related nature of the goods offered by Plaintiff and Defendant under the same mark, consumers are likely to mistakenly believe that Defendant's products come from, are sponsored or licensed by, or are otherwise affiliated or connected with Plaintiff and/or its TODDY Mark. Plaintiff is known for its coffee and tea-related products including home and commercial brewers, filters, accessories, premium coffee and tea, and merchandise, including drinking vessels, all of which Plaintiff sold before Defendant's first use of the infringing TODDY mark; consumers are thus likely to associate Defendant's drinking vessels with Plaintiff and/or its TODDY Mark. Furthermore, Plaintiff's success in the field of coffee-related products in particular is likely to enhance the likelihood of confusion given that Defendant advertises the Brumate Mugs as "Insulated Coffee Mug[s]." Defendant's claim, moreover, that the Brumate Mugs work for "cold beverages" is further likely to cause confusion given that Plaintiff is known for its cold brewing products. And Defendant's

---

[6] *See* Simon Difford, *Cocktail glassware*, Difford's Guide, https://www.diffords guide.com/g/1150/how-to-make-cocktails/cocktail-glassware (last accessed June 8, 2022); *see also, e.g.*, https://shop.sagamorespirit.com/products/hot-toddy-glass (last accessed June 8, 2022); https://www.cocktailcourier.com/product/hot-toddy-mug-set-of-4/ (last accessed June 8, 2022).

sale of drinking vessels in connection with the infringing TODDY mark will exacerbate the
confusion given that Plaintiff also sells drinking vessels in connection with its TODDY Mark.

### Injury to Plaintiff and the Public

29.    Defendant's actions with respect to its use of the infringing TODDY mark have
damaged and irreparably injured and, if permitted to continue, will further damage and
irreparably injure Plaintiff, the TODDY Mark, and Plaintiff's reputation and goodwill associated
with the TODDY Mark. Defendant's actions also damage the public's interest in being free from
confusion as to the source, sponsorship, and/or affiliation of Plaintiff's and Defendant's
products.

30.    Defendant's use of the infringing TODDY mark is likely to cause confusion,
mistake, or deception as to the source or origin of Defendant and/or its products with Plaintiff
and/or Plaintiff's products.

31.    Defendant knew or should have known of Plaintiff's prior rights in the TODDY
Mark before adopting and using the mark in connection with its own products, and thus
Defendant has acted willfully with respect to Plaintiff's prior trademark rights.

32.    Plaintiff has no adequate remedy at law.

### IV.    CLAIMS FOR RELIEF

### COUNT 1
### Trademark Infringement
### Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

33.    Plaintiff re-alleges and incorporates by reference each and every allegation set
forth above.

34.     Defendant used and continues to use in commerce reproductions and colorable imitations of the TODDY Mark in connection with the offering, sale, distribution, and advertising of Defendant's products, which are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's products, services, and commercial activities above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35.     Defendant's actions described above have at all times relevant to this action been willful and/or knowing.

36.     As a direct and proximate result of the actions of Defendant as alleged above, Plaintiff has been and will continue to be damaged and irreparably harmed.

37.     Plaintiff has no adequate remedy at law.

**COUNT 2**
**False Designation of Origin and Unfair Competition**
**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)**

38.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth above

39.     Defendant's actions described above are likely to cause confusion, mistake, or otherwise deceive the public as to the origin, sponsorship, or approval of Defendant's products and commercial activities, and thus constitute false designation of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

40.     Defendant's actions described above have at all times relevant to this action been willful and/or knowing.

41.     As a direct and proximate result of the actions of Defendant as alleged above, Plaintiff has been and will continue to be damaged and irreparably harmed.

42.     Plaintiff has no adequate remedy at law.

**COUNT 3**
**Common Law Unfair Competition**

43.     Plaintiff re-alleges and incorporates by reference each and every allegation set
forth above.

44.     Defendant's acts alleged herein constitute unfair competition in violation of
Plaintiff's rights under Colorado common law.

45.     Defendant has made unauthorized and infringing use of Plaintiff's trademarks and
trade name in promoting, marketing and selling their products.

46.     Through prior and continuous use of the TODDY Mark, the public mind
identifies the user of that mark with Plaintiff and Plaintiff's products.

47.     Defendant has used the name TODDY and/or a simulation of the name in
connection with the sale of products similar to those sold by Plaintiff. The public is likely to be
deceived by this use.

48.     As a direct and proximate result of the actions of Defendant as alleged above,
Plaintiff has been and will continue to be damaged and irreparably harmed.

49.     Plaintiff has no adequate remedy at law.

**COUNT 4**
**Deceptive Trade Practices**
**Under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105**

50.     Plaintiff re-alleges and incorporates by reference each and every allegation set
forth above.

51.     Defendant's use of the infringing TODDY mark constitutes deceptive trade
practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105,

because by such use Defendant (1) passes off its goods as those of another; (2) makes a false representation as to the source, sponsorship, approval and/or certification of its goods; and (3) makes a false representation as to affiliation, connection and/or association with or certification by Plaintiff.

52.    Defendant's conduct occurred in the course of Defendant's business and has been and continues to be knowing, willful, deliberate and in bad faith, with intent to deceive and to trade on the goodwill associated with Plaintiff's TODDY Mark.

53.    Defendant's deceptive trade practices have had and will continue to have a significant negative impact on the public, which is likely be deceived as to the origin, sponsorship, or approval of Defendant's products and commercial activities.

54.    By its conduct, Defendant has harmed and deceived the public and inflicted damage and irreparable injury upon Plaintiff's legally protected interest in the TODDY Mark and its goodwill, for which it has no adequate remedy at law, and Defendant will continue to do so unless restrained and enjoined by the Court from further infringing the TODDY Mark and confusing the public.

## V.    PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above, and award it relief including, but not limited to, the following:

    a.  An Order declaring that Defendant's use of the infringing TODDY mark infringes

        Plaintiff's TODDY Mark and constitutes trademark infringement, false designation of

origin, unfair competition, and deceptive trade practices under federal, state, and/or common law, as detailed above;

b. An Order enjoining Defendant and its respective officers, directors, agents, servants, and employees, and persons acting in concert with them:

    i. From using, promoting, selling, marketing, or registering the infringing TODDY mark or any trademark, service mark, logo, trade name, or other identifier that is confusingly similar to the TODDY Mark;

    ii. From passing off any products or services as those of Plaintiff or otherwise implying an association of Defendant's products with those of Plaintiff, causing a likelihood of confusion or misunderstanding as to the source or sponsorship or affiliation of their business, products or services with Plaintiff;

    iii. From instructing, assisting, aiding, or abetting any other person or business entity in engaging or in performing any of the activities referred to in subparagraphs i and ii above;

c. An Order compelling Defendant to provide an accounting of all gains, profits, benefits, and advantages derived as a result of the infringement of the TODDY Mark and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

d. An Order directing Defendant to immediately and permanently remove the infringing TODDY mark from all products, websites (including but not limited to Defendant's https://www.brumate.com/ website), third-party websites (including but not limited to

Defendant's social media pages on Facebook, Twitter, LinkedIn, and any other social media platforms), advertising, promotional materials, television commercials, videos, signage, posters, displays, brochures, catalogs, newsletters, manuals, forms, stationery, promotional merchandise, print materials, and any other materials and things that bear or display the infringing TODDY mark, or any other designs, logos, names, or marks that are confusingly similar to Plaintiff's TODDY Mark;

e.  An Order directing Defendant to immediately cancel all placements of any advertisements, promotions, and listings in any media or format bearing or displaying the infringing TODDY mark, or any other designs, logos, names, or marks that are confusingly similar to Plaintiff's TODDY Mark;

f.  An Order requiring Defendant to pay Plaintiff the cost for corrective advertising and/or to engage in corrective advertising in a manner directed by the Court;

g.  An Order directing Defendant to file with this Court and serve on Plaintiff's attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

h.  An Order requiring Defendant to account for and pay to Plaintiff any and all profits arising from the foregoing acts of infringement, false designation of origin, and unfair competition, and increasing such profits for payment to Plaintiff in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

i.  An Order requiring Defendant to pay Plaintiff trebled compensatory damages in an amount as yet undetermined caused by the foregoing acts of false designation of origin and unfair competition;

j.  An Order requiring Defendant to account for and pay to Plaintiff any and all profits arising from the foregoing deceptive trade acts under the Colorado Consumer Protection Act;

k.  An Order requiring Defendant to pay Plaintiff trebled compensatory damages in an amount as yet undetermined caused by the foregoing deceptive trade acts under the Colorado Consumer Protection Act;

l.  An Order requiring Defendant to pay Plaintiff's costs and attorney fees in this action pursuant to 15 U.S.C. § 1117, Colo. Rev. Stat. § 6-1-113, and other applicable statutes and laws; and

m.  Other relief as the Court may deem appropriate.

## VI.    JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: June 8, 2022                    _/s/ Carolyn J. Fairless_____
                                       Carolyn J. Fairless
                                       Melissa L. Romero
                                       WHEELER TRIGG O'DONNELL LLP
                                       370 Seventeenth Street, Suite 4500
                                       Denver, CO 80202-5647
                                       Telephone: (303) 244-1800
                                       fairless@wtotrial.com
                                       romero@wtotrial.com

                                       David M. Kelly (admission to be sought)
                                       Kelu Sullivan (admission to be sought)
                                       Saul Cohen (admission to be sought)
                                       KELLY IP, LLP
                                       1300 19th Street, N.W., Suite 420
                                       Washington, D.C. 20036
                                       Telephone: (202) 808-3570
                                       david.kelly@kelly-ip.com
                                       kelu.sullivan@kelly-ip.com
                                       saul.cohen@kelly-ip.com

                                       *Attorneys for Plaintiff*